UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN  DIVISION

_____

SCOTT REED BLAISDELL
and VICKI LYNN BLAISDELL,

                    Plaintiffs,                  Case No. 1:15-cv-575

v.                                     Honorable Paul L. Maloney

VILLAGE OF CASSOPOLIS et al.,

                    Defendants.
_____/

## OPINION

        This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by Scott Blaisdell, a state prisoner, and his wife, Vicki Blasdell.  The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A.  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs' action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiffs' complaint concerns events leading up their arrest and prosecution on drug and firearm charges in Cass County.  In their *pro se* amended complaint[1] (ECF. No. 9), Plaintiffs sue the Village of Cassolopis (Village); Village Manager Cynthia Lagrow; Cass County Sheriff Joseph Underwood; Cass County Undersheriff Richard Behnke; Cass County Sheriff Department Captain Lyndon Parrish: Cass County Drug Enforcement Team (CCDET) Field Commander David Toxopaeus; former CCDET members Savita Purlee and David Nevins; current CCDET members Phillip Small, Jarrid Bradford, and Daniel Wiggins; attorneys David Grow and John Targowski; and John Does 1-5, who are described as supervisory officers of the Cass and Dowagiac County Sheriff Departments.

Plaintiffs allege that in 2012, following the inception of the National Precursor Log Exchange System ((NPLEx), an electronic logging system used by pharmacies and law enforcement to track sales of over-the-counter cold and allergy medications containing precursors to methamphetamine, they became the target of a police investigation.  According to Plaintiffs, police raided their home in Edwardsburg, Michigan, on February 17, 2012, and discovered a one-pot methamphetamine lab. Plaintiffs, who were not home at the time of the raid, retained Defendant attorneys Grow and Targowski and turned themselves in to the authorities.  Based upon the evidence discovered at the residence, Plaintiffs were charged with several drug and weapons offenses.  Plaintiff Vicki Blasidell pleaded guilty to two

---

[1]Plaintiffs filed a motion to amend their complaint (ECF No. 8).  Under Fed. R. Civ. P. 15(a), a party may amend their pleading once as a matter of course at any time before a responsive pleading is served.  Plaintiffs have not filed a previous amendment and Defendants have not filed an answer to the complaint; consequently, leave of the Court is not required to amend the complaint.  *See* 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE, §1483, at 584-86 (1990).  Plaintiffs' motion for leave to amend the complaint (ECF No. 8) will be granted and that amendment will be deemed to have been filed *instanter*.

controlled substances charges and was sentenced to two years of probation, which was discharged on

April 1, 2015. (Order for Discharge, ECF No. 1-1, PageID.47).  Following a jury trial in the Cass County

Circuit Court, Plaintiff Scott Blaisdell was convicted of operating or maintaining a controlled substance

laboratory involving hazardous waste, MICH. COMP. LAWS § 333.7401c(2)(c); operating or maintaining

a controlled substance laboratory involving a firearm, MICH. COMP. LAWS § 333.7401c(2)(e); operating

or maintaining a controlled substance laboratory involving methamphetamine, MICH. COMP. LAWS §

333.7401c(2)(f); possession of methamphetamine, MICH. COMP. LAWS § 333.7403(2)(b)(i); possession

of a dangerous weapon, MICH. COMP. LAWS § 750.224(1); manufacture of less than 20 marijuana plants,

MICH. COMP. LAWS § 333.7401(2)(d)(iii); possession of marijuana, MICH. COMP. LAWS §

333.7403(2)(d); maintaining a drug house, MICH. COMP. LAWS § 333.7405(1)(d); and six counts of

possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. *People v.*

*Blaisdell*, No. 316835, 2015 WL 479069, at *1 (Mich. Ct. App. Feb. 5, 2015).

Plaintiff Scott Blaisdell appealed his conviction to the Michigan Court of Appeals.  In

addition to an appellate brief filed by counsel, he filed a *pro se* Standard 4 brief raising several claims,

including a challenge to the sufficiency of the search warrant and ineffective assistance of counsel.  The

court of appeals rejected Plaintiff Scott Blaisdell's claims of error and affirmed his convictions and

sentences in an unpublished opinion issued on February 5, 2015.  *People v. Blaisdell*, 2015 WL 479069.

The Michigan Supreme Court subsequently denied Plaintiff Scott Blaisdell's application for leave to appeal

on December 9, 2015.  *See People v. Blaisdell*, No. 151315, 871 N.W.2d 709 (Mich. Dec. 9, 2015).

In the amended complaint, Plaintiffs contend that Defendants Purlee, Nevins and John Doe

targeted them and other unsuspecting citizens of Cass County who purchased medications containing

pseudoephedrine and subjected them to unlawful search and seizure and false arrest.  Notwithstanding a security gate and "No Trespassing" signs, Defendants Purlee, Nevins and Doe trespassed on their property without probable cause and attempted to "knock and talk" for purposes of gathering information for their investigation. Plaintiffs allege that Defendant Purlee knowingly provided false information in her warrant affidavit dated February 17, 2012, that Plaintiffs had exceeded their federal compliance limit for the purchase of pseudoephedrine.  Defendants Purlee, Nevins and Doe allegedly failed to distinguish between Plaintiffs' legal acquisition of pseudoephedrine and suspected criminal activity and refused to match the Plaintiffs' signatures with the recorded pharmacy purchase signatures on the NPLEx system.  Plaintiffs further claim that Defendant Purlee also inflated the number of methamphetamine cases that she had investigated in order to influence the magistrate judge to sign the search warrant.

Plaintiffs also allege that Defendants Purlee, Nevins, Toxopaeus, Small, Wiggins, Bradford and John Does 1-5 improperly confiscated their personal property, including valuable military collectibles and firearms, and converted it for their sole use and benefit.

Plaintiffs claim that Defendants Toxopaeus, Small, Bradford, Wiggins and John Doe failed to intervene to protect Plaintiffs from the constitutional infringements perpetrated by Defendants Purlee, Nevins and Doe.  They further assert that Defendants Village, Underwood, Behnke, Parrish and Toxopaeus were responsible for training and supervising Defendants Purlee, Nevins, Small, Bradford, Wiggins and Doe and participated or acquiesced in the unconstitutional conduct of those officers.  Plaintiff assert that Defendants Underwood, Behnke, Parrish and Toxopaeus were aware of Defendant Nevins and Purlee's history of breaking rules and failing to following department policies and procedures in conducting methamphetamine investigations.

- 4 -

Plaintiffs list eight counts in their complaint as follows: (1) deprivation of Fourth and Fourteenth Amendment; (2) conspiracy; (3) deprivation of federal right to personal safety and security; (4) failure to supervise and train; (5) deprivation of Sixth Amendment right to effective assistance of counsel; (6) unjust enrichment from the conversion of Plaintiffs' personal property; (7) intentional infliction of emotional distress; and (8) gross negligence.  Additional factual allegations relating to these claims will be provided below as necessary to resolve Plaintiffs' claims.  Plaintiffs seek compensatory and punitive damages.  In addition, Plaintiffs seeks a judgment from this Court finding that "the custody, detention, and incarceration of plaintiff [Scott Blaisdell] by defendant's [sic] violated the Fourth, Sixth and Fourteenth Amendment of the United States Constitution."  (Am. Compl., ECF No. 9, PageID.102.)

## Discussion

Plaintiff Scott Blaisdell seeks a judgment from this Court finding that his criminal conviction and subsequent incarceration violate federal law.  A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).  Therefore, to the extent that Plaintiffs' complaint challenges the fact or duration of Scott Blaisdell's incarceration, it must be dismissed.  *See Dotson v. Wilkinson*, 300 F.3d 661, 665 (6th Cir. 2002); *Barnes v. Lewis*, No. 93-5698, 1993 WL 515483, at *1 (6th Cir. Dec. 10, 1993) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application

of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of §
1915(a)(3) and § 2253 (c), (4) differing fee requirements, (5) potential application of second or successive
petition doctrine or three-strikes rules of § 1915(g)).  For the reasons set forth below, Plaintiffs also fail to
state a claim for monetary damages.

        A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant
fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not
contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.
*Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the
elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must
determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its
face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability
requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*,
556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not
'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2));
*see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal*
plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C.
§§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

In Count 1 of the complaint, Plaintiffs contend that their Fourth and Fourteenth[2] Amendment rights were violated when officers trespassed on their property during the course of their investigation and used false and inaccurate information in the affidavit for the search warrant.[3]  The Michigan Court of Appeals thoroughly reviewed Petitioner's Fourth Amendment claim on appeal and found no error in the trial court's conclusion that probable cause existed to support the warrant.  The court of appeals further concluded that the trial court did not err in declining to suppress the evidence on the grounds that the affidavit contained false or inaccurate information.  The court stated:

> Defendant challenges the sufficiency of the search warrant and thereby the admissibility of the evidence uncovered at his home. Defendant sought to suppress the evidence based on the insufficiency of the search warrant affidavit, but the trial court denied his motion. Defendant contends that the search warrant affidavit did not allege facts amounting to probable cause to issue a warrant as the officer relied solely on reporting logs of pseudoephedrine purchases, without conducting any independent investigation into their accuracy. Moreover, defendant notes that the purchases he and his wife made were within legal limits. Defendant further implies that the affiant made false and misleading statements in the affidavits.

> We review de novo legal and constitutional questions affecting a trial court's decision on a motion to suppress and its factual findings for clear error. *People v Keller*, 479 Mich 467, 473-474; 739 NW2d 505 (2007); *People v Brown*, 297 Mich App 670, 674; 825 NW2d 91 (2012).

> A search warrant may only be issued upon a showing of probable cause. Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place. Probable cause must be based on facts presented to the

---

[2]The Fourth Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643 (1961).  To the extent Plaintiffs seeks to raise a substantive due process claim under the Fourteenth Amendment, it should be analyzed under the Fourth Amendment. Where "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Since the Fourth Amendment explicitly addresses the search and seizure in this case, Plaintiffs' claim must be analyzed under the Fourth Amendment rather than under the Fourteenth Amendment.

[3]Plaintiffs' claim for trespass is addressed below.

issuing magistrate by oath or affirmation, such as by affidavit. [*Brown*, 297 Mich App at 675 (citations omitted).]

When assessing a magistrate's decision with regard to probable cause, we must ask "whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). We must read the search warrant and the underlying affidavit in "a common-sense and realistic manner," giving deference to the trial court's conclusion. *Id.* at 604.

In this case, Deputy Kim Purlee, a member of the Cass County Drug Enforcement Team (CCDET), swore in an affidavit that she personally reviewed pseudoephedrine purchase lists from two Walmart stores and then reviewed a national database for such purchase lists from other stores. This investigation revealed that defendant and his wife "each had one of the highest amount of 'Total Activity Grams' for pseudoephedrine purchases." The affidavit outlined the purchases made by defendant and his wife between October 2011 and February 2012, at five separate stores. Specifically, defendant and his wife had purchased pseudoephedrine pills seven times in October 2011, four times in November 2011, six times in December 2011, five times in January 2012, and three times in February 2012, with the last purchase occurring on February 15, 2012. Defendant was blocked from purchasing pseudoephedrine twice in January 2012 and once in February 2012, based on the amount he and his wife had already purchased.

Based on her experience, Detective Purlee asserted that the amount of pseudoephedrine purchased by defendant and his wife in such a short time span was suspicious, because pseudoephedrine is the main ingredient in methamphetamine. She further represented, based on her training and experience, that individuals who manufacture methamphetamine often keep the manufacturing components in and around their homes for substantial periods of time, and accordingly expressed her belief that evidence of criminal activity would be found at defendant's home.

We discern no error in the trial court's conclusion that probable cause existed to support the search warrant. The store log books and national database contained a lengthy history of substantial amounts of pseudoephedrine purchases by both defendant and his wife, including attempts to purchase which were blocked because defendant had exceeded the maximum amount allowed by law. Detective Purlee described her experience in investigating methamphetamine manufacturing cases and the suspicions raised by defendant's purchases. The trial court was permitted to rely on Detective Purlee's conclusion based on her experience in the field. *See People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997). And the evidence gathered from the logs was adequate for a "reasonably cautious person" to find "a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place."

We also discern no error in declining to suppress the evidence based on the perceived falsities and misstatements in the affidavit emphasized by defendant.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. [Franks v Delaware, 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978).]

To support striking information from the search warrant affidavit, the defendant must "show by a preponderance of the evidence that the affiant has knowingly and intentionally or with reckless disregard for the truth inserted false material into the affidavit and that the false material is necessary to a finding of probable cause." *People v Williams*, 134 Mich App 639, 643; 351 NW2d 878 (1984) (quotation marks and citation omitted).

Defendant has not met his burden. Defendant contends that Detective Purlee misrepresented the number of methamphetamine investigations in which she took part, but provides no evidence to support his alternate suggestion that she had participated in only 35. Defendant contends that Detective Purlee misrepresented or exaggerated the pseudoephedrine log evidence and thereby improperly suggested that defendant violated the law with his purchases. A review of the log records provided by defendant, however, reveals that Detective Purlee's analysis was accurate. Defendant complains that the detective misidentified the direction in which the door to his house faced; however, this piece of information was completely irrelevant to the probable cause determination. Ultimately, defendant provided no grounds supporting the invalidation of the search warrant and requiring the suppression of the evidence discovered in his home.

*People v. Blaisdell*, 2015 WL 479069, at *5-7 (footnote omitted).

To the extent Plaintiffs now seeks monetary relief in this Court for alleged violations of their

Fourth Amendment rights, their claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994),

which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87 (footnote omitted).[4]

        Plaintiffs' allegations about the validity of the search warrant were integral to their criminal convictions. "Fourth Amendment claims arising out of searches occurring prior to Plaintiff's guilty plea [are] precluded by *Heck v. Humphrey*, [512 U.S. at 487], on the grounds that a civil suit holding that these searches were improper would undermine the basis of Petitioner's guilty plea and sentence." *Jacob v. Twp. of West Bloomfield*, 531 F.3d 385, 388 (6th Cir. 2008); *see also Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 609-14 (6th Cir. 2014) (holding that *Heck* barred the plaintiff's civil rights action that police used excessive force in making an arrest where the plaintiff was convicted of resisting arrest based on the same underlying exercise of force) *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 398-99

---

[4]The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages)*; Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

(6th Cir. 1999) (holding that, where an allegedly illegal search produced evidence used to obtain a conviction, the convicted cannot bring a § 1983 claim challenging the search until the conviction is overturned), *overruled in other part, Wallace v. Kato*, 549 U.S. 384, 393 (2007) (recognizing that *Heck* bars the pursuit of a Fourth Amendment arrest claim until the conviction is overturned, but concluding that the action accrues at the time of the arrest).  Therefore, Plaintiffs' Fourth Amendment challenge is barred under *Heck* unless and until their criminal convictions have been invalidated.

Plaintiff allege in Count 2 of the complaint that Defendants' conspired to violate their Fourth and Fourteenth Amendment rights.  Because Plaintiffs' conspiracy claim in inextricably linked with his Fourth Amendment claim, it also is barred by *Heck*.  Plaintiffs' claim in Count 3 that they were deprived of "federal right to person safety and security" appears to be nothing more than derivative of their Fourth Amendment claim against unreasonable search and seizure; consequently, it is *Heck*-barred.  Likewise, Plaintiffs' failure to supervise and train claim in Count 4 is dependent on their Fourth Amendment claim, and, thus, is barred by *Heck*.

In Count 5, Plaintiffs contend that their retained counsel were constitutionally ineffective. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Plaintiffs cannot show that their attorneys acted under color of state law.  In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel perform a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free from state control. *Id.* The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions. *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003). Because Plaintiffs' attorneys did not act under color of state law, no claim under § 1983 can be maintained against them.

Plaintiffs' claim in Count 1 for trespass, along with Count 6 for unjust enrichment from the conversion of their personal property and Count 7 for intentional infliction of emotional distress are state tort claims. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.

- 12 -

1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiffs' assertion that Defendants

violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiffs seek

to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise

jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider

the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests

against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178,

1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim

solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will

dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad*

*Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's*

*Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant

considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiffs'

state-law tort claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court

determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§

1915(e)(2) and 1915A(b).[5]

The Court must next decide whether an appeal of this action would be in good faith

within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

---

[5]Because Plaintiffs' action is being dismissed, their motion "Request[ing] court provide defendant's copies of complaint and order the waiver of fees and costs associated with the U.S. Marshal's Office as process servers" (ECF No. 3) and "Rule 4 Request for Issuance of Summons and Complaint Upon All Defendants" (ECF No. 10) will be denied as moot.

(6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is

barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

   This is a dismissal as described by 28 U.S.C. § 1915(g).

   A Judgment consistent with this Opinion will be entered.


Dated:   January 29, 2016                          /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge